**Lillian CHERENSKY and David Cherensky**

v.

**GEORGE WASHINGTON—EAST MOTOR LODGE et al.**

**Civ. A. No. 40933.**

United States District Court, E. D. Pennsylvania.

Oct. 8, 1970.

---

Mesirov, Gelman, Jaffe & Levin, Philadelphia, Pa., for plaintiff.

John J. O'Brien, Jr., Philadelphia, Pa., for defendant.

Kanner, Stein, Feinberg & Barol, Philadelphia, Pa., for Junior Executive Club of Graphic Arts.

Michael A. Foley, Philadelphia, Pa., for Frederick L. Diamond.

OPINION AND ORDER

MASTERSON, District Judge.

In this diversity action, plaintiffs sued defendants for injuries sustained as a result of a firecracker explosion on defendant-Motor Lodge's premises, which explosion plaintiffs allege was caused by the Motor Lodge's negligence. The case was tried to a jury and the jury found for the defendants. Presently before the Court is plaintiffs' motion for a new trial.

Plaintiffs assign fourteen reasons in support of their motion, but in their accompanying brief saw fit to press only the following:

(1) Defendants' liability was clearly established by the evidence and, hence, the verdict was against the weight of the evidence;

(2) The jury was confused and disregarded the law applicable to the case;

(3) The jury was guilty of misconduct. For the reasons set out below, we have decided to deny plaintiffs' motion.

## I. THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE.

■ Plaintiffs' argument that a new trial should be granted because the evidence clearly established defendants' liability need not detain us, for it is clearly without merit. This case was certainly one for the jury. There was evidence to support both the plaintiffs' and defendants' positions and the jury chose defendants'. This verdict was entirely justified.

## II. THE JURY WAS CONFUSED AND DISREGARDED THE LAW.

■ The following events form the basis of plaintiffs' jury confusion argument. The jury retired to deliberate at 12:15 P.M. At 5 P.M. a written communication was sent to the Court by the jury which read as follows:

"Your Honor,

"We have one juror who steadfastly insists that the defendant should have called the police after the first or second fire cracker was exploded at the Motor Lodge.

"This juror agrees that even if the police had been called there is no assurance that the last fire cracker, which injured Mrs. Tenensky, would not have been exploded or thrown.

"I and the other jurors have been unable to show her that since she agrees that the calling of the police would not have been sure to prevent the accident, the inn keeper cannot be judged negligent on that basis alone. That is, that the inn keeper evidently did not call the local police but is not negligent on that count alone.

"How shall we proceed?

/s Donald Lewis
forman"

The Court then reconvened for additional instruction to the jury. Those instructions were, in pertinent part, as follows:

"Really what this note seems to be saying is that some of you may feel that the innkeeper had a duty to call the police and therefore his failure to call the police was negligent; nonetheless that failure to call the police was not the proximate cause of the plaintiff's injuries because even if the police were called the injuries might nonetheless have occurred.

Your first question, as I told you in the beginning, is to decide whether the innkeeper failed in any duty that he might have owed the plaintiff. That could be failure to call the police; it could be failure to take other steps to warn the plaintiff or other customers that somebody was exploding cherry bombs or firecrackers around. It might be failure to have taken more intensive efforts in the beginning to find the person who was exploding the firecrackers. It could be any one of those theories of negligence which have been argued to you by counsel for the plaintiff and which have been vigorously disputed by counsel for the defendant. You should consider each one of them and say, 'was this negligence?' That is your first question.

Then you come to the second question. If you find that the innkeeper was guilty of something that you think was a failure to exercise reasonable care under the circumstances to protect the plaintiff and other customers from unreasonable risk of harm then you have to determine did that negligence proximately cause the plaintiff's injury?

I think there is a misapprehension as to the plaintiff's burden on proximate

cause because the note seems to reflect the idea that if the plaintiff has not persuaded you, for example, with respect to the calling of the police, that if the police were called the accident certainly would not have happened, then he has failed on his burden of proof and you should find a verdict for the defendant. That is not accurate because his burden on proximate cause is really no different from his burden on negligence, and that is to persuade you that it is more probable than not that but for the negligence the injury would not have occurred. Do you understand that? He does not have to prove it certainly would not have occurred. It is just are you persuaded from all of the evidence that it is more probable than not that if the alleged negligent act or omission had not been committed the injury would not have occurred?

There are two separate questions: First, negligence, and that is simply failure to exercise reasonable care. If you all agree that one or more things the innkeeper did or didn't do constitutes negligence, then the next question is, was that negligence a proximate cause of the accident? Can you say that it is more probable than not that but for the negligence the accident would not have occurred?" (Notes of Testimony, pp. 173–175).

At 5:25 P.M. the jury was excused to deliberate further and at 5:42 P.M. returned with its defendants' verdict. Based on the jury's note and our additional instructions, plaintiffs argue that the jury was confused as to plaintiffs' burden of proof on the issue of proximate causation, that the jury disregarded plaintiffs' other bases of liability and that our additional instructions, rather than serving to eliminate any confusion, merely weakened the resistance of the one dissident juror.

We cannot accept the plaintiffs' interpretation of these events. First, because the jury's communication only mentions one of plaintiffs' theories of liability this does not mean they disregarded plaintiffs' other theories. These theories, of course, could have been considered and rejected. Secondly, we do not necessarily read the communication as clearly indicating jury confusion. On the contrary, it appears, generally speaking, that the jury carefully analyzed the evidence in light of the applicable law. The note appears to indicate that the jury felt that even if they found the Motor Lodge to be negligent they would be forced to guess whether such negligence was a proximate cause of plaintiffs' injuries. However, even if there was some misunderstanding as to plaintiffs' burden of proof on causation, our additional instructions would serve to obviate this confusion. Also, on the face of it, these instructions might have served to enlighten, rather than weaken, the dissident juror. On the whole, we cannot say that the inferences plaintiffs draw from the above events are so clear that he is entitled to a new trial on that basis.

## III. THE JURY WAS GUILTY OF MISCONDUCT.

Plaintiffs' argument that the jury was guilty of misconduct is based on an affidavit they have filed stating that following the verdict plaintiffs were approached in the hall outside the courtroom by Juror No. 11 and informed that the jury's verdict was based on anti-Semitic prejudice against plaintiffs. (Juror No. 11 is the one dissident juror referred to in Section II of our Opinion. She identified herself to the Court as the dissident juror as the jury filed out after receiving additional instructions. At that time she noted to the Court the basis of her disagreement, as accurately reported in the jury's communication). (Notes of Testimony, p. 177).

■ ■ It is clear that if the jury's verdict was a result of religious prejudice the plaintiffs should have a new trial. *See* 6A Moore's Federal Practice, § 59.08(4), at page 3792. However, there is no competent proof presently on the record to prove that the jury's verdict was so based. The only proof we have of what occurred in the jury room

is plaintiffs' affidavit of what Juror No. 11 told them. Assuming what Juror No. 11 said to them is true, we do not think that she as a juror is competent to impeach her own verdict in light of the circumstances present in this case. Juror No. 11 had adequate opportunity to express any jury misconduct in open Court prior to final verdict. She could have done so at the time she identified herself as the dissident juror, but she did not. She could have brought this out at the time the jury was polled but she did not. Rather, Juror No. 11 at the time the jury was polled was twice asked if her verdict was for defendants and twice she responded affirmatively. (Notes of Testimony, p. 180). Only after these opportunities had passed and after the jury was discharged did she seek to express this complaint, not to the Court but to the plaintiffs. The case would appear to fall squarely within the rule prohibiting jurors from impeaching their own verdict.

■ Generally, a juror is not competent to testify to matters which would impeach his verdict once the jury has been discharged. *See* 6A Moore's Federal Practice, supra at 3796–97. This rule is a salutary one because it protects the secrecy of jury deliberation, supports the finality of verdicts and prevents possible post-verdict harassment of jurors. There is some authority, however, that this rule should not be woodenly applied in every case, especially in criminal cases, but rather that the Court can receive evidence from jurors as to the basis of a jury verdict after the jury has been discharged.[1] We have decided, however, that the rule of nonimpeachment of a jury verdict governs the case at bar given the circumstances before us, namely, where the case is civil not criminal, where there was more than adequate opportunity for Juror No. 11 to bring to light any jury misconduct in open court, where Juror No. 11 did in fact note to

the Court the basis of her disagreement with the jury but did not mention the alleged jury misconduct and where when polled Juror No. 11 twice reaffirmed her verdict. Accordingly, we must reject plaintiffs' argument for a new trial based on jury misconduct.

Finally, as to those reasons for a new trial which plaintiffs have not pressed in their brief, we have carefully reviewed the record and find them to be without merit.

### ORDER

And now, this 8th day of October 1970, it is ordered that plaintiffs' motion for a new trial be and the same is hereby denied.

---

1. See, e. g., State v. Levitt, 36 N.J. 266, 176 A.2d 465 (1961). See also Annot., 48 A.L.R.2d 971 for some cases which allow impeachment of verdicts by jurors where it is charged that a juror acted on a bias which he intentionally concealed on voir dire notwithstanding well-directed questions touching on this bias.