Filed 11/26/13  In re Elise G. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| In re ELISE G., a Person Coming Under the Juvenile Court Law. | |
| PLACER COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | C071568 |
| Plaintiff and Respondent, | (Super. Ct. No. 53003400) |
| v. | |
| Y.G., | |
| Defendant and Appellant. | |

Y.G., the mother of the minor Elise G., appeals from juvenile court orders declaring the minor to be a dependant of the court and removing her from mother's physical custody.  (Welf. & Inst. Code, §§ 360, 361, 395.)[1]  Mother contends the Placer County Department of Health and Human Services (DHHS) failed to comply with the notice requirements of the Indian Child Welfare Act (ICWA).  (25 U.S.C. § 1901 et seq.)  We agree, and conditionally reverse the judgment and remand for further proceedings.

---

[1]      Undesignated statutory references are to the Welfare and Institutions Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2012, the minor (born April 1999) was placed in protective custody after mother was arrested on child endangerment and substance abuse charges. Police entered mother's home in response to a report of a verbal altercation between mother and a neighbor at around 1:40 p.m. An officer smelled a strong odor of freshly burnt marijuana and believed mother was under the influence of alcohol and a central nervous system stimulant. Pursuant to a consensual search, officers discovered baggies containing marijuana, drying marijuana buds and stems, one bong in the minor's bedroom, and one bong in the living room. A youth detained at the residence said mother saw him smoke marijuana in the living room, and mother's home is where most of the neighborhood kids get marijuana.

Mother admitted other minors would go into the house and smoke marijuana, but they refused to leave when she directed them to do so. She denied being intoxicated, but indicated a drug test would show "a little bit of weed probably and some alcohol."

The minor told a social worker she smoked marijuana one to two times a week. She claimed the marijuana found in the home was left by her friends. The minor also told the social worker she was sober when the police arrived, which contradicted what she told the police -- that she had two to three shots of vodka within two and one-half hours of the police arriving and had smoked marijuana that afternoon.

DHHS filed a dependency petition in April 2012. Attached to the petition was an ICWA-010(A) form, stating the minor may have Indian ancestry. Mother indicated that her father (maternal grandfather of the minor) had possible Indian heritage of an unknown tribe. Mother stated she does not have an existing relationship with her father and did not have an exact address or phone number. Mother stated her father may reside in Montana.

At the April 2012, detention hearing, mother told the juvenile court she thought her father was half Indian and "I think it's Sioux," but she did not see her parents very

2

much.  The juvenile court detained the minor and found she may have Sioux heritage. The court instructed DHHS "to look into that on [mother's] father's side to see if there's any connection to the Sioux tribe."  At a pretrial conference later that month, the juvenile court stated, "I hope ICWA issues have gone out to the Sioux tribe."  There was no response to the juvenile court's statement.

A contested jurisdictional/dispositional hearing was held on June 6, 2012.  Mother testified that on the day of her arrest, she returned to find three boys visiting the minor. She told the boys to leave and called the police.  The marijuana in her home had been left by the boys; she did not see or smell the marijuana as it had been in their backpacks before she went to sleep.  She denied knowing that a bong was in the minor's room.

Mother said she rarely drank alcohol and did not use illegal drugs.  She had a small amount of alcohol and some cough syrup on the day she was arrested.  As a result of the incident, she pled guilty to opening and maintaining a place for the purpose of selling, giving away, or using narcotics (Health & Saf. Code, § 11366), a felony that would be reduced to a misdemeanor upon completing three years' probation.

The minor testified that she had not seen mother use illegal drugs and the marijuana found in the house belonged to her friends.

The juvenile court made the following orders:

Mother was not credible and the petition was sustained.  The minor was removed from the parents'[2] physical custody and placed in a foster home.  Reunification services were ordered for mother.

## DISCUSSION

Mother contends DHHS failed to comply with the ICWA's notice requirements. DHHS did not file a brief.

---

[2]    Father rarely saw the minor as she was estranged from him.  He was not interested in placement at the time of the jurisdictional/dispositional hearing.

3

Although DHHS has failed to file a respondent's brief, that failure " 'does not require an automatic reversal . . . . [T]he better rule is to examine the record and reverse only if prejudicial error is found.' " (*Estate of Cibulk* (1998) 67 Cal.App.4th 690, 691, fn. 1.)

When the juvenile court knows or has reason to know that a minor in a dependency proceeding may be an Indian child, "the party seeking the foster care placement of, or termination of parental rights to, [the] Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a).)

"Notice must be sent whenever there is reason to believe the child may be an Indian child. [Citation.] '[T]he juvenile court needs only a suggestion of Indian ancestry to trigger the notice requirement.' [Citation.]" (*In re Robert A*. (2007) 147 Cal.App.4th 982, 989.)

"Because ' "failure to give proper notice of a dependency proceeding to a tribe with which the dependent child may be affiliated forecloses participation by the tribe, [the ICWA] notice requirements are strictly construed." ' [Citation.] The notice sent to the Indian tribes must contain enough identifying information to be meaningful. [Citation.] A 'social worker has "a duty to inquire about and obtain, if possible, all of the information about a child's family history" ' required under regulations promulgated to enforce ICWA. [Citation.]" (*In re Robert A., supra*, 147 Cal.App.4th at p. 989.) This requires interviewing the parents, Indian custodian, and extended family members, so far as possible. (§ 224.3, subd. (c).)

"To enable the juvenile court to review whether sufficient information was supplied, [the Department] must file with the court ICWA notice, return receipts and responses received from the tribes. [Citation.]" (*In re Robert A., supra*, 147 Cal.App.4th at p. 989.) The ICWA's notice requirements are mandatory and cannot be waived by the

4

parties. (*Ibid*.) The ICWA notice must include, if known, the Indian child's name, birthplace, and birthdate; the name of the tribe in which the child is enrolled or may be eligible for enrollment; names and addresses of the child's parents, grandparents, great-grandparents and other identifying information, and a copy of the dependency petition. (§ 224.2, subd. (a)(5); *In re Mary G.* (2007) 151 Cal.App.4th 184, 209.)

The record is almost devoid of any DHHS activity regarding mother's claim of Indian heritage through her father. A notice of review hearing filed with the juvenile court on April 16, 2012, indicates the Bureau of Indian Affairs (BIA) was notified of a May 18, 2012, "review hearing."[3] There is no record that any ICWA notices were sent.

On this record, there is no evidence DHHS required mother to complete the relevant judicial council form and no evidence DHHS followed up on any contact information she supplied regarding the claimed Indian heritage. There also is no evidence DHHS contacted father regarding possible Indian heritage and investigated any Indian heritage he claimed. If the investigation revealed Indian heritage, then DHHS should have notified the relevant tribes, if any.[4]

DHHS's failure to make further inquiry regarding the minor's possible Indian heritage did not comply with the ICWA. Accordingly, we conditionally reverse the judgment and remand for compliance with the ICWA notice requirements.

DISPOSITION

The judgment is reversed and the matter is remanded to the juvenile court for the purpose of compliance with the notice provisions of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) and a determination whether the Indian Child Welfare Act

---

[3] The hearing scheduled for May 18, 2012, was the jurisdictional/dispositional hearing, rather than a review hearing.

[4] Mother claimed possible Sioux heritage through the maternal grandfather. If the maternal grandfather denied having Indian heritage and there were no other claims of Indian heritage, then DHHS would no longer have a duty to notify regarding this claim of Indian heritage.

5

applies in this case. The juvenile court is directed to order the Placer County Department of Health and Human Services to investigate whether the minor has possible Indian heritage and to notify the relevant tribes, if any. Thereafter, if it is determined the minor is an Indian child within the meaning of the Indian Child Welfare Act, the juvenile court must hold a further disposition hearing applying the requirements of the Indian Child Welfare Act. If it is determined the minor is not an Indian child, then the judgment shall be reinstated.

                                                                    HOCH    , J.

We concur:

      HULL    , Acting P. J.

      BUTZ    , J.